UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT MAXWELL, d/b/a NERI USA, A SUCCESSOR TO R.P.M. ASSOCIATES,** | § § § § | |
| **Plaintiff,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:13-cv-269** |
| | § | |
| **NERI NORTH AMERICA, and NERI S.p.A.,** | § § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Plaintiff Robert Maxwell brought this suit against Defendants Neri North America and Neri S.p.A. for breach of contract, tortious interference with contract, unjust enrichment, and conversion.  (Doc. No. 1, Ex. 3.) Defendants move for summary judgment as to Mr. Maxwell's claims, and move to exclude the testimony of Mr. Maxwell's damages expert, Joseph Leo.  (Doc. Nos. 23 and 24.)  After considering the Defendants' Motions, the responses thereto, and all applicable law, the Court concludes that Defendants' Motion for Summary Judgment must be **GRANTED**, and Defendants' Motion to Exclude must be **DENIED** as moot.

### I.    BACKGROUND

Neri S.p.A. manufactures urban lighting and urban décor in Italy.  (Doc. No. 24, Ex. 1 at 23:12-15.)  Neri World Trade LDA, "a 100 percent owned subsidiary of Neri S.p.A.," sold its products.  (Doc. No. 25, Ex. 5 at 22:23 - 23:1; Doc. No. 24, Ex. 1 at 23:20-25.)

Mr. Maxwell alleges that he began working with Neri companies in the early

1

1990s.  (Doc. No. 25, Ex. 6 at 2.)  Initially, "Neri SpA had sold very little product in the United States and was virtually unknown in the market."  (*Id.*)  According to Mr. Maxwell, he "began the process of contacting business agents and providing them with product information."  (*Id.*)

In 1999, Neri World Trade LDA and Mr. Maxwell entered into an agreement (the "Agreement") whereby Mr. Maxwell "under[took] to be the importer and authorized retailer of [Neri World Trade LDA] in the US."  (Doc. No. 24, Ex. 2 at  ¶ 6.)  The Agreement specified that "[Mr. Maxwell] will not promote any goods in competition with the goods marketed by [Neri World Trade LDA]," and "[Neri World Trade LDA] will not entrust third parties to promote and coordinate the sales of the goods in the territory."  (*Id.* at ¶ 9.)  Neri World Trade LDA agreed to pay Mr. Maxwell a commission for any products that it sold directly to other parties in the United States.  (*Id.* at ¶ 8.)  The Agreement would be "renewed by tacit agreement for periods of two years unless it is cancelled with [] 90 days notice before its renewal by registered mail."  (*Id.* at ¶ 10.)

Mr. Maxwell alleges that sales gradually increased to the point that they exceeded $3 million in 2004.  (Doc. No. 25, Ex. 6 at 3.)  According to Mr. Maxwell, "[t]he Neri brand had become established in the United States market, primarily due to [his] hard work in creating a business infrastructure for the product line."  (*Id.*)  On January 1, 2007, Mr. Maxwell changed his business name from R.P.M. Associates to Neri USA.  (*Id.* at 4.)

On September 9, 2011, Neri World Trade LDA sent a letter to Mr. Maxwell by registered mail to provide notice that Neri World Trade LDA "does not intend to extend the term of the agreement beyond its next expiry date, i.e. December 31, 2011."  (Doc. No. 24, Ex. 2 at 4.)  "Therefore, as of January 1, 2012, the agreement with [Mr. Maxwell]

shall no longer be in effect." (*Id.*)

According to Isacco Neri, the relationship with Mr. Maxwell was terminated "[b]ecause Neri had decided to establish a direct presence on the territory of the United States." (Doc. No. 25, Ex. 5 at 37:17-22.)  To this end, Neri S.p.A. founded Neri North America in the summer of 2011, and hired Shelley Morgan in June as the CEO.  (*Id.* at 16:4-6 and 41:15-20; Doc. No. 25, Ex. 7 at 15:3-8.)  Neri North America immediately began "[o]rganizing, setting up an office, [and] making business contacts."  (Doc. No. 25, Ex. 5 at 16:7-13.)

Mr. Maxwell alleges that Ms. Morgan contacted his agents and customers shortly thereafter.  In October of 2011, Ms. Morgan contacted an agent in the Washington, D.C. area to ask "if he would be interested in representing Neri North America."  (Doc. No. 25, Ex. 6 at 5.)  In November of 2011, Ms. Morgan informed Mr. Maxwell that she had "just left a meeting with Irvine Company, one of [Mr. Maxwell's] best customers."  (*Id.*)  On December 20, 2011, Neri North America quoted a project in the Washington, D.C. area for the exact same price that Mr. Maxwell had quoted in October of 2011.  (*Id.* at 7.)  Isacco Neri insisted that, regardless of contacts or quotes, Neri North America "absolutely did not have any sales in 2011 because it was perfectly clear that it was not entitled to do so."  (Doc. No. 25, Ex. 5 at 44:1-2.)  The Madison quote, for example, "worked out into a sale in 2013."  (*Id.* at 54:24-25.)

"[S]ometime in the fall of 2011," after sending Mr. Maxwell the termination letter, Neri World Trade LDA "was closed."  (Doc. No. 25, Ex. 5 at 28:15-18.)  Mr. Maxwell explains that "[t]he fact [that] Neri World Trade is not a party to this action is due to Neri closing its wholly owned subsidiary shortly after it issued a termination letter

to Maxwell." (Doc. No. 25 at 5.)

Mr. Maxwell filed this lawsuit against Neri S.p.A. and Neri North America on October 30, 2012 for breach of contract, unjust enrichment, tortious interference, and conversion.   (Doc. No. 1, Ex. 3.)   Defendants brought a counterclaim against Mr. Maxwell for breach of contract due to outstanding invoices placed with Neri S.p.A. and Neri North America after the closure of Neri World Trade LDA.  (Doc. No. 3 at 7-9.) The Court granted summary judgment to Defendants for their breach of contract counterclaim.   Defendants' Motion for Summary Judgment on Mr. Maxwell's claims, and Defendants' Motion to Exclude the Testimony of Joseph Leo are currently pending before this Court.  (Doc. Nos. 23 and 24.)

## II.   LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact.  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).  If the moving party meets this burden, the non-moving party must go

4

beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### III.   ANALYIS

#### A.  Breach of Contract

The elements of a breach of contract claim are: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). Defendants contest the existence of a valid contract between Mr. Maxwell and themselves, the occurrence of any breach of the Agreement between Mr. Maxwell and Neri World Trade LDA, and the evidence of any damages as a result. (Doc. No. 24 at 14-18.)

The Agreement was signed by Mr. Robert Maxwell, on behalf of R.P.M. Associates, and Mr. Antonio Neri, on behalf of Neri World Trade LDA. (Doc. No. 24, Ex. 2 at 3.) Defendants, Neri S.p.A. and Neri North America, were not signatories to the Agreement. A contract with one corporation generally does not bind that corporation's affiliates. *In re Merrill Lynhc Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007); *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 341 (Tex. 1968). There are, however, six theories under which an affiliated entity may be bound by another corporation's contract: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) estoppel, and (6) third-party beneficiary. *See Int'l Demographics, Inc. v. SF Newspaper Co.*, 2006 WL 1897042 at *6 (S.D. Tex. July 10, 2006). In this case, Mr. Maxwell argues

that Defendants can be held liable for breach of the Agreement under the alter ego theory, or due to an assumption of liability.  (*See* Doc. No. 25 at 14-17.)  The Court finds neither argument to be persuasive.

### 1.  Liability Under Alter Ego Doctrine

Mr. Maxwell argues that "[a]lthough the Agreement designates Neri World Trade LDA as the 'Seller,' Neri S.p.A. was the actual party to the contract."  (Doc. No. 25 at 14.)  Mr. Maxwell asserts that "Neri World Trade LDA was 100% owned and controlled by Neri S.p.A."  (*Id.*)  Antonio Neri, the CEO of Neri S.p.A., signed the Agreement and the termination letter on behalf of Neri World Trade LDA.  (*Id.*)  Mr. Maxwell concludes that "Neri World Trade is clearly the alt[e]r ego of Neri S.p.A."  (*Id.* at 15.)

Texas law presumes that separate corporations are distinct entities.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002).  However, it is possible to pierce the corporate veil and hold a parent company liable for the obligations of its subsidiary in limited circumstances.  *Flores v. Bodden*, 488 Fed. Appx. 770, 775-76 (5th Cir. 2012) (*citing Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)).  For example, under the alter ego doctrine, the corporate veil may be pierced "where a corporation is organized and operated as a mere tool or business conduit of another corporation."  *Id.*  The alter ego doctrine applies when (1) there is such unity between two corporations that the separateness of the single corporation has ceased, and (2) holding only the single corporation liable would result in injustice.  *See id.* at 776; *see also SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2009).

The first element evaluates the relationship between the entities.  The following factors can be considered: (1) whether the entities shared a common business name,

common offices, common employees, or centralized accounting; (2) whether one entity paid the wages of the other entity's employees; (3) whether one entity's employees rendered services on behalf of the other entity; (4) whether one entity made undocumented transfers of funds to the other entity; and (5) whether the allocation of profits and losses between the entities is unclear. *Tryco Enter., Inc. v. Rovinson*, 390 S.W.3d 497, 509 (Tex. App.—Houston [1st Dist.] 2012).

The second element asks whether the corporate form is being used for an illegitimate purpose. In contract claims, the Texas Legislature has required the plaintiff to show that the corporate fiction was used as a means of perpetrating an actual fraud. *See* Tex. Bus. Orgs. Code § 21.223; *Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 68 n.4 (5th Cir. 1994). Section 21.223 of the Texas Business Organizations Code provides that an owner[1] of a corporation "may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation . . . on the basis that the [owner] is or was the alter ego of the corporation," unless "the obligee demonstrates that the [owner] caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the [owner]." Tex. Bus. Orgs. Code § 21.223. Actual fraud, in the context of the alter ego doctrine, involves "dishonesty of purpose or intent to deceive." *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010).

In this case, Mr. Maxwell provides very little evidence in support of his conclusory assertion of the alter ego doctrine. (Doc. No. 25 at 14-15.) Mr. Maxwell cites

---

[1] Section 21.223 applies if the defendant is "[a] holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation." Tex. Bus. Orgs. Code § 21.223. "Affiliate" means "a person who controls, is controlled by, or is under common control with another person." Tex. Bus. Orgs. Code § 1.002(1).

to the deposition of Alberto Portolani, the product manager for Neri S.p.A. in 2010, who stated that he thought that Neri World Trade LDA was controlled by Neri S.p.A.[2]  (Doc. No. 25, Ex. 8 at 22:1-3.)  In addition, Mr. Maxwell highlights the fact that Antonio Neri, the CEO of Neri S.p.A., signed the Agreement, and executed the termination letter. (Doc. No. 25 at 14.)

The Court finds this evidence insufficient to raise a genuine issue of material fact as to whether Neri World Trade LDA was an alter ego of Neri S.p.A.  The case law is clear that "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil."  *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985); *see also Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975) ("A subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders.").  "Instead, the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice."  *Flores*, 488 Fed. Appx. at 777 (internal citation marks omitted).

Mr. Maxwell has also failed to present any evidence of actual fraud as required by Section 21.223 of the Texas Business Organizations Code.  There is no evidence that Neri S.p.A. caused Neri World Trade LDA to be used for the purpose of perpetrating and

---

[2] Plaintiff also cites to the deposition of Isacco Neri, the current CEO of Neri S.p.A, who stated that "Neri North America is a company 100 percent owned by Neri S.p.A."  (Doc. No. 25, Ex. 5 at 15:14-15.)  This refers to a wholly different subsidiary – Neri North America rather than Neri World Trade LDA – and has no relevance to the relationship between Neri World Trade LDA and Neri S.p.A.

did perpetrate an actual fraud on Mr. Maxwell primarily for the direct personal benefit of Neri S.p.A. *See, e.g.*, *Tomlinson v. Combined Underwriters Life Ins. Co.*, 2010 WL 1486914 at *5-6 (N.D. Okla. April 13, 2010) (finding that the plaintiff had failed to make a showing sufficient to establish the existence of actual fraud, an element required under Texas law).

### 2.  Assumption of Liability

Mr. Maxwell also appears to argue that Defendants assumed the obligations of Neri World Trade LDA's Agreement, even if they were not parties to that Agreement. Under this theory, Defendants must have either expressly or impliedly assumed the obligations of the contract. *Int'l Ass'n of Machinists, Lodge No. 6 v. Falstaff Brewing Corp.*, 328 S.W.2d 778, 782 (Tex. App—Houston 1959). An express assumption requires express promissory words, or words of "assumption" on the part of the assignee. *Lone Star Gas Co. v. Mexia Oil & Gas, Inc.*, 833 S.W.2d 199, 201 (Tex. App.—Dallas 1992). An implied assumption "must arise from the presumed intention of the parties as gathered from the instrument as a whole." *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 125 (Tex. App.—Houston [14th Dist.] 1996) (quoting *Danciger Oil & Refining Co. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941)).

According to Mr. Maxwell, "Neri S.p.A. and Neri North America recognized they were subject to [the Agreement], despite the fact that Neri World Trade LDA had executed it and they technically had not." (Doc. No. 25 at 15-16.) When asked whether Neri S.p.A. was subject to the agreement between Neri World Trade and Mr. Maxwell, Isacco Neri responded:

> This is a question certainly for lawyers. There is no doubt
> that – well, the agreement is between R.P.M. Associates

> and Neri World Trade.  Of course, Neri S.p.A. is involved.
> But Neri S.p.A. did not sign that agreement.

(Doc. No. 25, Ex. 5 at 37: 8-12.)  The Agreement references Neri S.p.A. when it specifies

that "[t]he goods marketed by Neri World Trade LDA are produced by the NERI SpA

seated in Longiano (Italia)."  (Doc. No. 25, Ex. 3.)  Neither this reference in the

Agreement nor Mr. Neri's comment after the fact constitutes an express or implied

assumption.

### B.  Unjust Enrichment

Unjust enrichment is an equitable principle holding that one who receives benefits

unjustly should make restitution for those benefits.[3]  *Villarreal v. Grant Geophysical,*

*Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004).  "A party may recover under

the unjust enrichment theory when one person has obtained a benefit from another by

fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. City of*

*Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Pope v. Garrett*, 211 S.W.2d 559,

560, 562 (Tex. 1948)).  Unjust enrichment "is not a proper remedy 'merely because it

might appear expedient or generally fair that some recompense be afforded for an

unfortunate loss to the claimant, or because the benefits to the person sought to be

charged amount to a windfall."  *Casstevens v. Smith*, 269 S.W.3d 222, 229-30 (Tex.

App.—Texarkana 2008).  Rather, "[t]he profit must be 'unjust' under principles of

---

[3] There is considerable confusion as to whether unjust enrichment can stand as an independent cause of action under Texas law.  *See Eagle Metal Prods., LLC v. Keymark Enter., LLC*, 651 F. Supp. 2d 577, 591 & n.49 (N.D. Tex. 2009) (collecting cases). Despite the confusion, Texas courts "seem willing to award recovery based on unjust enrichment, even if it is nothing more than a theory."  *Newington Ltd. v. Forrester*, 2008 WL 4908200 at *4 (N.D. Tex. Nov. 13, 2008); *see also Ed & F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 869 (S.D. Tex. 2010) (noting that "the courts in the Fifth Circuit and a number of Texas courts in examining the case law have concluded that rather than an independent cause of action, it is a 'theory of liability that a plaintiff can pursue through several equitable causes of action.'").  Without resolving this debate, the Court concludes that summary judgment is appropriate for Mr. Maxwell's claim or theory of unjust enrichment.

equity." *Id.*

A plaintiff generally cannot recover under a theory of unjust enrichment "when a valid, express contract covers the subject matter of the parties' dispute." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). The Texas Supreme Court explained that, "[w]hen a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Id.* This rule applies not only when the plaintiff is seeking recovery against a party with whom he expressly contracted, but also "when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefitted from its performance." *W&W Oil Co. v. Capps*, 784 S.W.2d 536, 537 (Tex. App.—Tyler 1990); *Jupiter Enter., Inc. v. Harrison*, 2002 WL 318305 at *4 (Tex. App.—Dallas Mar. 1, 2002).

In his Complaint, Mr. Maxwell alleges that Defendants "derived benefits from the unjust retention of a benefit (that being Maxwell's business enterprise and its infrastructure and good will) to the detriment of Maxwell." (Doc. No. 1, Ex. 3 at 11.) Mr. Maxwell's business infrastructure and good will were developed buying Neri S.p.A. products from Neri World Trade LDA, and selling them in the United States. These services were explicitly contemplated by the Agreement with Neri World Trade LDA, in which Mr. Maxwell "declare[d] . . to be able to promote efficiently the image and the sales of the goods" and "accept[ed] . . . the charge of coordinating and expanding the commercial network on the USA territory." (Doc. No. 25, Ex. 3 at 2.) Mr. Maxwell was indisputably compensated for his services by commission during the life of the Agreement. (Doc. No. 24, Ex. 1 at 71:1-5.) Mr. Maxwell cannot now maintain a claim of unjust enrichment against Defendants for the subject matter of his express contract

with Neri World Trade LDA.  Although Neri S.p.A. and Neri North America may have benefitted from Mr. Maxwell's promotion of the Neri brand in the United States, Mr. Maxwell was compensated for his services through his contract with Neri World Trade LDA.

In his Response to Defendants' Motion for Summary Judgment, Mr. Maxwell argues that his claim for unjust enrichment "involves the loss of income/profit he would have earned had the quotes he submitted to Neri in 2011 for projects he was handling were allowed to mature to fruition."  (Doc. No. 25 at 18.)  "These quotes were assumed by Neri North America, which intended to treat them as though they had secured [the] same."  (*Id.*)  A claim for unjust enrichment requires not just a loss to Mr. Maxwell, but an unjust benefit to Defendants.  A future, "intended," benefit is insufficient.  The only concrete benefit in the record is the commission that Neri North America earned on the sale to The Madison in 2013. (Doc. No. 25, Ex. 5 at 54:21-25.)  There is, however, no evidence that this benefit was obtained by fraud, duress, or undue advantage.  *See, e.g.*, *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, 2011 WL 3902754 at *8 (S.D. Tex. Sept. 6, 2011).

### C.  Conversion

Under Texas law, there are four elements for a claim of conversion: "(1) [the plaintiff] legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused."  *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009).  "Demand is not required if it would have been useless, or if the possessor's acts amount to a clear repudiation of the

owner's rights." *Bures v. First Nat'l Bank, Port Lavaca*, 806 S.W.2d 935, 938 (Tex. App.—Corpus Christi 1991) (internal citations omitted).   In this case, Mr. Maxwell alleges that Neri S.p.A. and Neri North America unlawfully converted "Neri USA's business infrastructure, client list, existing contracts, existing proposals, and good will." (Doc. No. 1, Ex. 3 at 11.)

A claim for conversion cannot be based on intangible property, unless "an underlying intangible right has been merged into a document and that document has been converted." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001).   Under this so-called "merger exception," Texas courts have recognized conversion claims for lease documents, confidential customer lists, and shares of stock. *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Sers., Inc.*, 401 S.W.3d 95, 98 (Tex. App.—Houston [14th Dist.] 2011).   Mr. Maxwell's business infrastructure and good will are intangible and cannot serve as the basis of a conversion claim.   *See, Pillar Panama, S.A. v. DeLape*, 2008 WL 1777237 at *2 (S.D. Tex. 2008).

Mr. Maxwell has produced written lists of his agents and his clients.   (Doc. No. 25, Exs. 12 and 13.)   A Texas Court of Appeals recognized that a customer list could constitute property subject to conversion.   *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762-63 (Tex. App.—Texarkana 1996), *rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997).   There is no evidence, however, that either Defendant illegally took or used Mr. Maxwell's lists.   (*See* Doc. No. 24, Ex. 1 at 83-85 and 131-32.)

Mr. Maxwell focuses his Response to Defendants' Motion for Summary Judgment on the existing proposals, or quotes.   "The property at issue here are quotes obtained by Maxwell in 2011, and submitted to Neri, which it kept and intended to treat

as though it had procured [the] same." (Doc. No. 25 at 18.)  Mr. Maxwell has presented

the written quotes for 2011.  (Doc. No. 25, Ex. 14.)  Mr. Maxwell has not explained,

however, what intangible right is represented by these documents.  The Court has found

no support for the proposition that an offer for a future contract constitutes property that

can be converted.  *See W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F. Supp. 1043,

1057 (S.D. Tex. 1996) (dismissing a conversion claim based on the premise that the

defendant "wrongfully took control over" the plaintiffs' customers and the contractual

rights associated with those customers); *see also Unlimited Screw Prods., Inc. v. Malm*,

781 F. Supp. 1121, 1131 (E.D. Va. 1991) (dismissing a conversion claim based on

"[p]otential 'future contracts'").

### D.  Tortious Interference with Contract

Tortious interference with an existing contract requires the plaintiff to show: (1)

the plaintiff had a valid contract; (2) the defendant willfully and intentionally interfered

with that contract; (3) the interference proximately caused the plaintiff damage; and (4)

the plaintiff suffered actual damage or loss.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198,

207 (Tex. 2002).  Texas law also protects prospective contracts and business relations

from tortious interference.  *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909,

923 (Tex. 2013).  Tortious interference with prospective relations requires the plaintiff to

show: (1) there was a reasonable probability that the plaintiff would have entered into a

business relationship with a third party; (2) the defendant either acted with a conscious

desire to prevent the relationship from occurring or knew the interference was certain or

substantially certain to occur as a result of the conduct; (3) the defendant's conduct was

independently tortious or unlawful; (4) the interference proximately caused the plaintiff

injury; and (5) the plaintiff suffered actual damage or loss as a result.  *Id.*

Mr. Maxwell alleges that "Neri North America and Neri SpA willfully and intentionally interfered with Maxwell's existing contacts and business connections, such as interviewing Maxwell business agents, quoting a project Maxwell had specified . . ., and contacting existing clients . . .while Maxwell's contract with [Neri World Trade LDA] was still effective."  (Doc. No. 1, Ex. 3 at 10.)  "The defendants' diversion of Maxwell's business opportunities and tortious interference with Maxwell's business associates has proximately caused actual, direct, consequential and incidental damages to Maxwell."  (*Id.*)  The Court understands these allegations to raise two distinct claims: (1) a tortious interference with existing contracts claim in regards to Mr. Maxwell's agents, and (2) a tortious interference with prospective relations claim with respect to Mr. Maxwell's "business opportunities."  The Court concludes that summary judgment must be granted on both bases.

Mr. Maxwell's claim for tortious interference with existing contracts must fail since Mr. Maxwell has presented no evidence of any such contract.  Mr. Maxwell alleges that "Neri contacted and engaged agents actively contracted and working with Maxwell." (Doc. No. 25 at 19.)  He states, without explanation or evidentiary support, that he "had, at the minimum, an implied contract" with these agents.  (*Id.*)  There is no evidence of any valid contract in the record.  Mr. Maxwell furthermore admits that he, himself, terminated the alleged implied contracts in late December of 2011.  (Doc. No. 24, Ex. 1 at 88:10-17.)

Mr. Maxwell appears to make a separate claim for Defendants' tortious interference with prospective clients.  Mr. Maxwell alleges that "Neri contacted and

engaged . . . Maxwell's clients/projects in which he was active ('The Madison') while the Agreement was still in effect in 2011." (Doc. No. 25 at 19.) Mr. Maxwell explained that "with the construction of Neri North America, [Defendants] are coming in and appropriating my business, and the relationships benefitting from projects that I had done before . . . ." (Doc. No. 24, Ex. 1 at 118:2-6.) Specifically, Mr. Maxwell alleges that Defendants re-quoted a project with Commercial Lighting Sales and contacted the Irvine Company. (Doc. No. 1, Ex. 3 at 10.)

Mr. Maxwell had previously supplied products to the Irvine Company for a project called Irvine Spectrum. (Doc. No. 24, Ex. 1 at 117:11-12.) The undisputed evidence in the record shows that Ms. Morgan met with the Irvine Company in 2011. (Doc. No. 25, Ex. 7 at 127:3-9.) Ms. Morgan stated that the "sole purpose for that meeting was . . . to determine and try to get representation for working with them in the future." (*Id.* at 121:9-12.) Mr. Maxwell alleges that the Irvine Company discussed "replacing the lamping" in the fixtures that he had previously supplied. (Doc. No. 24, Ex. 1 at 117:11-16.) Mr. Maxwell argues that Ms. Morgan let Irvine Company know that "Neri USA is no longer relevant, and that in the future . . . they will be dealing with Neri North America." (*Id.* at 117-18.)

Mr. Maxwell also highlights the provision of a quote to one of his customers for a project called The Madison. Ms. Morgan agreed that Mr. Maxwell had produced the original quote for Commercial Lighting & Sales on October 13, 2011. (Doc. No. 25, Ex. 7 at 56:23-24.) There is no dispute that Mr. Maxwell's quote expired on December 13, 2011. (Doc. No. 25, Ex. 14 at 29.) Ms. Morgan stated that Commercial Lighting & Sales contacted her "to know if [Neri North America] would honor that pricing based off []

Bob Maxwell's pricing in 2012." (Doc. No. 25, Ex. 7 at 116:8-13.)  Neri North America subsequently issued a quote with the exact same pricing on December 20, 2011.  (Doc. No. 25, Ex. 11.)

Mr. Maxwell's claim for tortious interference with prospective clients must fail since there is no evidence that Defendants' conduct was independently tortious or unlawful.  To show that a defendant's conduct was independently tortious, a plaintiff "must prove that the defendant's conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).  "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations."  *Id.*  Mr. Maxwell has not presented any evidence that Defendants' conduct crossed the line from competitive to independently tortious or unlawful.  Mr. Maxwell might argue that Defendants' conduct violated the alleged "non-compete clause" in his contract with Neri World Trade LDA.  As discussed above, this contract was not binding on Neri S.p.A. or Neri North America.  In any case, "a breach of contract does not alone constitute a separate tort."  *See Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2009 WL 4016117 at *3 (N.D. Tex. Nov. 20, 2009).

**IV.   CONCLUSION**

Defendants' Motion for Summary Judgment is hereby **GRANTED**.  Defendants' Motion to Exclude the Testimony of Joseph Leo is **DENIED AS MOOT**.  The case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**SIGNED** this the 30th day of May, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE